J-A10022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SAYJOUNA VANSYCKEL | : | No. 1316 EDA 2023 |

Appeal from the Order Entered April 26, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0005705-2021

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and BECK, J.

CONCURRING AND DISSENTING MEMORANDUM BY BECK, J.:

**FILED SEPTEMBER 6, 2024**

I agree with the learned Majority that the Commonwealth presented a prima facie case for the charges of tampering with or fabricating physical evidence and obstructing the administration of law or other governmental function. I write separately because in my view, the Commonwealth also established a prima facie case for the charges of third-degree murder, voluntary manslaughter, and possession of an instrument of crime ("PIC").

With respect to third-degree murder, the Majority correctly states that third-degree murder is "murder that was not committed intentionally nor while the defendant perpetrated a felony" and that it "requires the Commonwealth to establish the killing was 'conducted with malice aforethought.'" Majority Memorandum at 8 (citing 18 Pa.C.S. § 2502; **Commonwealth v. Packer**,

168 A.3d 161, 168 (Pa. 2017)). I depart, however, from the Majority's conclusion that the Commonwealth failed to present evidence that Vansyckel acted with malice based on its determination that the record lacked evidence that showed she "manifestly intended to use the weapon upon the victim and certainly not on a vital part of Dawson's body." *Id.* at 11.

In support of this conclusion, the Majority first cites *Commonwealth v. Holt*, 273 A.3d 514 (Pa. 2022), for the proposition that in analyzing whether a person possessed the intent to kill, "the fact that a victim suffered injuries to a vital body part is not dispositive[,]" there must also be other evidence demonstrating that the individual manifestly intended to use the weapon upon the victim. Majority Memorandum at 10-11 (citing *Holt*, 273 A.3d at 529). Although *Holt* addressed the sufficiency of the evidence to support a first-degree murder charge, not the charge of third-degree murder at issue here, the Majority concludes, in reliance on *Holt*, that "there was no evidence, direct or circumstantial, that would show Vansyckel 'manifestly intended to use the weapon upon the victim' and certainly not on a vital part of Dawson's body[,]" and that instead, the evidence was that the knife was only used as a defensive mechanism when Dawson unlawfully entered Vansyckel's home. *Id.* at 11 (quoting *Holt*, 273 A.3d at 529). The Majority further concludes that "Vansyckel admitted to waving a knife around to scare off Dawson, nothing else. She never once admitted to intentionally using the knife to stab Dawson

on any part of her body, and no other evidence was produced which established that fact." ***Id.***

The Majority then analogizes this case to ***Commonwealth v. Austin***, 575 A.2d 141 (Pa. Super. 1990). Majority Memorandum at 11-12. The Majority explains that under ***Austin***, both the specific intent to kill and malice can be inferred when a deadly weapon is directed at a vital part of the body. Majority Memorandum at 12. Relying on Vansyckel's claims that she only swung the knife in attempt to scare Dawson, the Majority concludes that the Commonwealth failed to present evidence that Vansyckel directed the knife at a vital part of Dawson's body and thus did not present a prima facie case of malice, which is required for a charge of third-degree murder. ***Id.*** at 11-13.

I respectfully disagree with Majority's analysis for several reasons. At the outset, I point out that ***Holt*** is of dubious precedential value to this case. As noted above, Holt was charged and convicted of first-degree murder for the shooting death of a police officer. ***Holt***, 273 A.3d at 522-27. On appeal, Holt argued that the Commonwealth failed to demonstrate that he acted with the specific intent to kill the police officer, and that instead, he recklessly fired his gun in the officer's general direction. ***Id.*** at 527-28. Specifically, Holt contended that "his actions demonstrated a callous indifference regarding the possibility that [the police officer] would die, making him guilty of murder in the third degree." ***Id.*** at 528. Put another way, Holt expressly conceded that he acted with malice and had committed third-degree murder. ***See id.*** His

argument on appeal was that he did not act with the specific intent to kill and therefore did not commit first-degree murder. *See id.* Consequently, the element of first-degree murder at issue in *Holt* was the specific intent to kill; malice was not at issue and was neither contemplated nor discussed by the *Holt* Court. *Id.* Thus, *Holt* is inapposite to the instant matter.

Further, the Majority's reliance on both *Holt* and *Austin* to conclude that malice requires proof that the defendant intentionally directed a deadly weapon at a vital part of the victim's body ignores the well-established law that malice may be established, inter alia, through "recklessness of consequences." *See Commonwealth v. Santos*, 876 A.2d 360, 363 (Pa. 2005) ("Malice comprehends not only a particular ill-will, but also a wickedness of disposition, hardness of heart, **recklessness of consequences**, and a mind regardless of social duty, although a particular person may not be intended to be injured."). Although its recitation of the definition of malice acknowledges that malice includes "a class of wanton and reckless conduct which manifests such an extreme indifference to the value of human life which transcends the negligent killing[,]" Majority Memorandum at 9 (quoting *Commonwealth v. Packer*, 168 A.3d 161, 168-69 (Pa. 2017)), the Majority makes no attempt to incorporate this notion of extreme recklessness into its analysis, let alone find that it is inapplicable to the instant case.

Instead, the Majority, like the trial court, endeavors to fact find on Vansyckel's behalf, accepting as credible Vansyckel's statements that her actions were done in self-defense, and that Dawson's death was nothing more than an unfortunate accident. Indeed, despite acknowledging that "Vansyckel provided differing stories of what occurred at her home on March 24, 2021," *id.* at 4, the Majority credits Vansyckel's claim that "that the knife was only used as a defensive mechanism when Dawson unlawfully entered Vansyckel's home. Vansyckel admitted to waving a knife around to scare off Dawson, nothing else."[1] *Id.* at 11. Additionally, the Majority concludes that there was no evidence, direct or circumstantial, that would show Vansyckel intended to use the knife on the victim and "certainly not on a vital part of Dawson's body[,]" as Vansyckel "never once admitted to intentionally using the knife to stab Dawson on any part of her body, and **no other evidence was produced which established that fact**." Majority Memorandum at 11 (emphasis added).

Notably absent from the Majority's memorandum is any discussion of the Philadelphia Medical Examiner's report. The Medical Examiner's Office found that Dawson had been stabbed not once, but five times—four times in

_____

[1] The record reflects that Vansyckel provided several different stories to police in support of her claim of self-defense. First, she told police that she used the knife because Dawson physically attacked her; then she told police that she retrieved the knife because Dawson attacked her mother; and finally, she told police that she grabbed the knife because Dawson verbally threatened her. N.T., 4/26/2023, Exhibit C-3A.

the chest and torso area and once on her left arm.  N.T., 4/26/2023, Exhibit C-2.  The report further indicated that one of the stab wounds was caused by a forceful, downward plunge with the knife, as it entered Dawson's left chest and penetrated two-and-a-half inches through her ribs, heart, diaphragm, and down to her liver.  *Id.*  The Medical Examiner concluded that Dawson's cause of death was a stab wound to her torso and the manner of death was homicide.  *Id.*  Importantly, both parties stipulated to the findings and conclusions of the Medical Examiner's report regarding Dawson's cause and manner of death.  *See* N.T., 3/1/2022, at 6, 16-17.

The law is clear that courts are not "to make weight or credibility determinations when assessing whether the Commonwealth established a prima facie case."  *Commonwealth v. Wroten*, 257 A.3d 734, 743 (Pa. Super. 2021).  Additionally, at a preliminary hearing, "inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect and the evidence must be read in the light most favorable to the Commonwealth's case."  *Commonwealth v. Perez*, 249 A.3d 1092, 1102 (Pa. 2021) (quotation marks and citation omitted).  Thus, the Majority's decision to credit Vansyckel's version of the events and ignore the contrary evidence presented by the Commonwealth in support of the charges is in direct contravention of the standard for determining whether the Commonwealth established a prima facie case.

Even crediting Vansyckel's claim that she acted in self-defense, in my view, the record demonstrates that her actions, at the very least, reflected a class of wanton and reckless conduct that manifests an extreme indifference to the value of human life. *See Packer*, 168 A.3d at 168-69. As the Majority acknowledges, Vansyckel admitted to waving a knife at Dawson to scare her, Majority Memorandum at 11, and she did so at close enough range and with such force that she thrust the knife two-and-a-half inches into Dawson's chest, fatally stabbing her. Further indicative of the reckless nature of Vansyckel's actions is the evidence indicating that Dawson was unarmed on the night of her death—a fact the Majority also fails to recognize. *See* N.T., 4/26/2023, Exhibit C-3.

Moreover, I would conclude that the evidence, when viewed in the light most favorable to the Commonwealth (as the standard for determining whether the Commonwealth has established a prima facie case requires), supports a finding that Vansyckel acted intentionally. The Medical Examiner's report indicates that Vansyckel stabbed Dawson a total of five times. N.T., 4/26/2023, Exhibit C-2. As stated above, the Medical Examiner's report further reveals that one of stab wounds was two-and-a-half inches in depth and penetrated Dawson's heart, diaphragm, and liver. *Id.* Thus, the Medical Examiner's report should be viewed as contradicting Vansyckel's claim that she merely waved a knife around and accidentally clipped Dawson; she stabbed Dawson five times, one of which was a deep, penetrating, and

ultimately fatal wound through three of her vital organs. *See id.* Critically, the parties stipulated that the Medical Examiner would testify to a reasonable degree of medical certainty that Dawson's cause of death was this stab wound to her chest and torso and the manner of death was homicide. N.T., 3/1/2022, at 6, 16-17.

While it could absolutely be the case that Vansyckel's claims of self-defense or accidental death are true—and may even ultimately result in a finding of innocence—I decline to engage in factfinding at this time. In so doing, the trial court and the Majority ignore several of the varying statements she made to police as well as the Medical Examiner's report. Based upon the record before this Court and the standard by which the issue must be reviewed, I would therefore conclude that the Commonwealth established a prima facie case of third-degree murder.

For the same reasons, I cannot agree with the Majority's conclusion that the Commonwealth did not establish a prima facie case of voluntary manslaughter. Although the Majority correctly states that voluntary manslaughter "contemplates an intentional killing[,]" Majority Memorandum at 14 (quoting ***Commonwealth v. Patton***, 936 A.2d 1170, 1178 (Pa. Super. 2007)), it nonetheless concludes that "[t]he Commonwealth did not present any evidence that Vansyckel knowingly or intentionally killed Dawson and that "the Commonwealth's evidence shows at most an accidental or unintentional killing." *Id.* In so concluding, the Majority credits Vansyckel's story that she

"did not know she stabbed Dawson until after Dawson fell to the ground a second time, did not get up, and Vansyckel's mother told her that she had stabbed Dawson." ***Id.***

Once again, I view the Majority's conclusion as requiring factfinding in favor of Vansyckel, improperly weighing the evidence and making credibility determinations to support its conclusion that Vansyckel's stabbing of Dawson was accidental and not intentional. ***See Wroten***, 257 A.3d at 743. Moreover, as stated above, the record supports a finding that the Commonwealth did in fact present evidence that demonstrates Vansyckel intentionally killed Dawson—the Medical Examiner's report, which states that Dawson sustained five separate stab wounds, one of which deeply penetrated Dawson's chest and three of her vital organs. ***See*** N.T., 4/26/2023, Exhibit C-2. Viewing the evidence in the light most favorable to the Commonwealth, as our standard requires, I would conclude that Vansyckel's actions stabbing Dawson five times, including a deep, penetrating, forceful downward thrust to Dawson's chest that inflicted the fatal wound, supports an inference that Vansyckel acted intentionally. I would therefore conclude that the Commonwealth also established a prima facie case of voluntary manslaughter.

Finally, for similar reasons, I cannot agree with the Majority's conclusion that the Commonwealth failed to establish a prima facie case of PIC. While I do not take any issue with the Majority's recitation of the law relating to the crime of PIC, I depart from the Majority's conclusion that there was no

evidence that Vansyckel possessed the knife under circumstances not manifestly appropriate for lawful use or that she did not intend to employ the knife unlawfully. Even if I, like the Majority, were to credit Vansyckel's claims that she "merely used the knife to scare Dawson after Dawson unlawfully entered her home[,]" Majority Memorandum at 9, I disagree with the Majority's conclusion that the record does not support a finding that Vansyckel's use of the knife in these circumstances was unlawful. The record reveals that Dawson was unarmed, and based on the differing versions of events Vansyckel offered to police, it is difficult to discern whether Dawson posed a physical threat to Vansyckel and her mother such that Vansyckel's use of deadly force was justified. *Id.* at 4; N.T., 4/26/2023, Exhibit C-3.

Additionally, the Majority offers no caselaw in support of its assertion that recklessly swinging a knife at close distance at an individual to scare that person, which resulted in the death of the individual, constitutes the lawful use of a kitchen knife. *See* Majority Memorandum at 16. Moreover, given that the Medical Examiner's report, which reflects that Dawson sustained multiple and substantial stab wounds, supports the inference that Vansyckel's actions were intentional, I disagree with the Majority's conclusion that Commonwealth did not present any testimony or evidence to establish the criminal intent underlying Vansyckel's use of the knife. *See id.* I would therefore conclude that the Commonwealth established a prima facie case of PIC.

Based on the foregoing, I would reverse the order denying the Commonwealth's motion to refile the charges of third-degree murder, voluntary manslaughter, PIC, tampering with evidence, and obstructing justice and remand this matter to the trial court for trial on all charges.